UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SUSAN COOKSON,
    Plaintiff,

v.                              C.A. No. 14-297-M-LDA

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,
    Defendant.

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge

Plaintiff Susan Cookson brings this action for judicial review of the Social Security Commissioner's ("the Commissioner") final decision, as issued in accordance with the ruling of an Administrative Law Judge ("ALJ"), denying her claim for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. Ms. Cookson seeks reversal without or, alternatively, with a remand of the determination that she is not entitled to Social Security (ECF No. 5), while the Commissioner seeks an affirmance of the ALJ's decision. (ECF No. 8). After a thorough review, this Court finds that substantial evidence supports the Commissioner's finding that Ms. Cookson was not disabled during the relevant time period.

I.    **BACKGROUND**

Ms. Cookson is a high school educated woman who has previously worked as an inventory clerk and a nanny. (Tr. at 71-75). She currently packs prescription medication into bottles at home for her partner's pharmacy business approximately five hours per week in order to remain covered by his insurance policy. (*Id.* at 72).

1

Ms. Cookson's medical issues are rooted in an April 2001 laparoscopic cholecystectomy that was complicated by an abdominal aortic bleed. (*Id.* at 371). This surgery sent her on a path of continual pain management for the next decade. She saw Dr. Pradeep Chopra in October 2007 for abdominal and muscle spasms. (*Id.* at 418-23). From 2002 through 2010, Dr. John Phillip, a laparoscopic surgeon, prescribed Vicodin and OxyContin for her abdominal and flank pain. (*Id.* at 793-806). In May 2009, he said he would no longer do so and referred her to doctors in Boston for pain management. (*Id.* at 801). In November 2010, Dr. Phillip performed a laparoscopy and lysis of adhesions along with a Tru-Cut liver biopsy. (*Id.* at 795-96). Post-operation, Ms. Cookson presented with a soft, flat, and non-tender abdomen. (*Id.* at 794).

Another doctor that she saw for pain during the 2008 through 2010 time period was Dr. Kameel Garas, a pain specialist at Lahey Clinic. (*Id.* at 523-45). In 2008, he advised Ms. Cookson to stay active and to consult with a behavioral medical specialist to explore the possibility of using non-pharmaceutical methods for treating her chronic pain. (*Id.* at 534). He also gave her nerve blocks, managed her medications, and on four occasions in 2008 and 2009 pulsed radio frequency ablation. Dr. Garas's notes indicate that Ms. Cookson reported fairly good relief after these treatments, but that her symptoms of anxiety and depression were exacerbating her perception of pain. (*Id.* at 534).

Ms. Cookson saw Dr. Chopra again in 2011 for left flank and right groin pain. (*Id.* at 935-940). She denied depression and indicated that the opioid medications she was taking relieved her pain only when she was inactive. (*Id.* at 935). Dr. Chopra concluded that she was disabled because no conservative measures were effective at relieving her pain. (*Id.* at 940).

Ms. Cookson also saw Dr. Albert Marano, a neurologist, for her pain. Dr. Marano managed Ms. Cookson's use of narcotics during that time period. In July of 2011, he concluded

2

that she was not able to work, despite the fact that he had not examined Ms. Cookson since 2007. (*Id.* at 811). When he saw her again in 2013, Dr. Marano's notes indicate she walked daily on a trip to Florida in March, but that she reported more pain when she was more active. (*Id.* at 934). She is quoted in his notes as saying that Fentanyl "saved her life." (*Id.*) In June 2013, Ms. Cookson told Dr. Marano that she suffered depression and anxiety due to stress in her relationship. (*Id.* at 933). Dr. Marano prescribed two blocks for left groin pain. (*Id.* at 934).

In August 2013, Ms. Cookson saw Dr. Stephen D'Amato who told her to continue taking Fentanyl, Ativan, and Xanax for pain. (*Id.* at 950). His records from that visit do not contain any details of physical examinations, but he advised her to apply for total disability. (*Id.* at 952). Dr. D'Amato indicated in a supplemental questionnaire as to her residual functional capacity that her psychological symptoms would cause moderately severe limits in dealing with work. (*Id.* at 954).

A psychological undercurrent runs through Ms. Cookson's medical records, but those symptoms were largely unaddressed. Her primary care physician, Dr. Robert Cohen, treated her between March 2008 and 2011. During that period, he managed her medications for Generalized Affective Disorder and Attention Deficit Disorder. (*Id.* at 769-75). She denied depression or anxiety and her mental status and memory exams were normal. (*Id.* at 769). Dr. Cohen prescribed her Ativan in March 2011 for a trip to Florida. (*Id.*) She treated with Tina Plaszek, a Licensed Mental Health Counselor, between January and June of 2011 who diagnosed her with an adjustment disorder with mixed anxiety and depressed mood. (*Id.* at 738-49). Ms. Cookson had a GAF of 55-63 and her initial assessment of moderate difficulties was reduced to mild difficulties upon discharge by Ms. Plaszek. (*Id.*) In March 2012, Ms. Cookson had inpatient treatment after a suicide attempt. (*Id.* at 866-77). Her GAF at discharge was 50. (*Id.* at 868). In

May of 2012, Dr. Kristin Stone, a psychologist, gave Ms. Cookson a psychological evaluation. (*Id.* at 886-97). Ms. Stone diagnosed her with a pain disorder with psychological factors. (*Id.*) Ms. Cookson had one follow-up visit, but the records for that visit contain no details of diagnosis or treatment. (*Id.* at 879).

Pursuant to her August 24, 2009 disability application, Ms. Cookson was examined by Dr. Parsons, a psychologist. (*Id.* at 612). During that exam in 2010, she denied depression and anxiety, but said she is upset about her pain. (*Id.* at 617). Her responses pattern to testing was indicative of only mild problems with depression. (*Id.* at 616). Dr. Parsons diagnosed her with adjustment disorder with depression and a GAF of 60. (*Id.* at 619). He recommended referral to a pain clinic and outpatient psychotherapy. (*Id.*).

After being denied initially and at the rehearing stage, she requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 169). The hearing was held and she was found not disabled at Step Five on September 21, 2012. (*Id.* at 132). In his decision, the ALJ focused on three severe impairments – neuropathic pain syndrome, asthma, and adjustment disorder. (*Id.* at 138). Ms. Cookson requested a review by the Appeals Council, who directed the ALJ to obtain additional evidence and medical and vocational opinions relating to Ms. Cookson's depression and anxiety disorders based on its finding that "[t]he claimant has also alleged severe chronic pain with depression, and her symptoms have been observed by Social Security staff." (*Id.* at 156).

Pursuant to this remand, Ms. Cookson saw Dr. Francis Sparadeo for a psychological evaluation to assess her emotional status relative to chronic pain. (*Id.* at 941-49). He performed a battery of tests and determined that she had clinically significant depression and anxiety

relative to her pain with a GAF of 45-55. (*Id.* at 947). He concluded that she was totally disabled and unable to work. (*Id.*)

The ALJ held a hearing on October 18, 2013. (*Id.* at 92). He engaged a medical expert, Dr. John Ruggiano, who testified at the hearing. The substance of Dr. Ruggiano's testimony was that Ms. Cookson had no clear diagnosis of a mental disorder so no clear secondary functional limitations relative to a mental health impairment. (*Id.* at 104-06). He also did not find functional limitations because she had almost no psychological treatment record on which to base a diagnosis or Residual Functional Capacity ("RFC"). (*Id.*) Dr. Pella also testified as a medical expert on remand. (*Id.* at 99). He found, based on the complete medical record, minimal objective findings to substantiate her complaints of pain. The only objective findings were scar tenderness and decreased range of motion related to her pain. (*Id.* at 101-02). Dr. Pella opined that any functional limitations other than those related to the two objective findings would be based on subjective complaints and would come down to the ALJ's assessment of Ms. Cookson's credibility. (*Id.*)

After the hearing and based on the additional evidence and testimony from medical experts and a vocational expert, the ALJ denied Ms. Cookson's application again, finding that her only severe impairment was asthma. (*Id.* at 31-54). Ms. Cookson submitted additional evidence – January 2014 records related at an MRI – to the Appeals Council in support of her appeal. (*Id.* at 16-27). The Appeals Council considered those records, but denied Ms. Cookson's request for review so, on May 1, 2014, this second decision became the final decision. (*Id.* at 1). Ms. Cookson now appeals that ruling to this Court.

## II. STANDARD OF REVIEW

A district court's role in reviewing the Commissioner's decision is limited. Although questions of law are reviewed *de novo*, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). The term "substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The determination of substantiality must be made upon an evaluation of the record as a whole. *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). In reviewing the record, the Court must avoid reinterpreting the evidence or otherwise substituting its own judgment for that of the Secretary. The resolution of conflicts in the evidence is for the Commissioner, not the courts. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981) (citing *Richardson*, 402 U.S. at 399).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. *Seavey v. Barnhart*, 276 F.3d 1, 11 (1st Cir. 2001) (citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)).

## III. APPLICABLE LAW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" or combination of

impairments "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), (d)(2)(B); *see also* 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement.").

The ALJ must follow five well-known steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments, which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden of proving step five. *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 7 (1st Cir. 1982). In considering whether a claimant's physical and mental impairments are severe enough to qualify for disability, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must

make specific and pronounced findings when deciding whether an individual is disabled. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).

## IV. ALJ'S DECISION

Following the five steps, the ALJ found that: (1) Ms. Cookson had not engaged in substantial gainful activity since October 1, 2007, the alleged onset of her disability (Tr. at 33); (2) Ms. Cookson had a severe impairment of asthma and many non-severe impairments including: organic mental disorder, affective disorders, pain syndrome with opioid dependence, major depression, degenerative disc disease of the lumbar spine status post-aortic perforation, anxiety-related disorders, and somatoform disorder (*id.* at 34); (3) Ms. Cookson did not have an impairment or combination of impairments which met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*id.* at 48); (4) Ms. Cookson retained the RFC to perform a full range of work at all exertional levels with some minor limitations (*id.* at 49); that Ms. Cookson's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the above RFC (*id.* at 50); (5) and she is able to perform her past relevant work as an inventory clerk and nanny, (*id.* at 51).

## V. ANALYSIS

Ms. Cookson's three main issues in this appeal are: (1) the Appeals Council's refusal to consider new evidence, i.e. a January 2014 MRI on her lower back and the related medical records, (2) the ALJ's determination that Ms. Cookson's mental impairments were not severe in the face of the medical opinions, and (3) the ALJ's negative evaluation of her credibility as to her pain and limitations resulting therefrom.

8

A.  NEW EVIDENCE

Ms. Cookson asks the Court to remand her case because the Appeals Council erred in refusing to consider a January 2014 MRI that she submitted for its consideration during its review of the ALJ's December 2013 denial of benefits. She argues that this most recent MRI is new and material evidence of a disabling low back condition, consideration of which could change the outcome of her case.

The Court is mindful that it should not consider additional evidence that the claimant failed to present to the ALJ upon its review of the ALJ's decision, but it "may, however, consider the additional evidence to determine whether the Appeals Council was 'egregiously mistaken in refusing to review the ALJ's decision." *Saenz v. Colvin*, 61 F. Supp. 3d 195, 205 (D. Mass. 2014) (quoting *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001)). That conclusion is entitled to "great deference." *Mills*, 244 F.3d at 6).

Ms. Cookson's argument is essentially a non-starter because the Appeals Council *did* consider the new documents when it declined to review the ALJ's decision. (Tr. at 1-2). Moreover, Ms. Cookson has failed to establish that the Appeals Council made either an explicit mistake of law or other egregious error in refusing to review the ALJ's decision based on the new evidence. The regulations provide that the Appeals Council "will consider additional evidence only where it relates to the period on or before the date of the hearing decision, *and* only if you show that there is a reasonable probability that the evidence, alone or when considered with the other evidence of record, would change the outcome of the decision, *and*: (1) Our action misled you; (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from submitting the evidence earlier; or (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from submitting the evidence

earlier." (*Id.* at 8) (emphasis added). The Appeals Council determined, after reviewing the new evidence, that it did not add anything new and material to the evidence that the ALJ reviewed in making his 2013 decision. The Court sees nothing in the record contrary to that conclusion and therefore defers to that decision.

Even if the Court were to assume that the Appeals Council erred in determining that the new evidence would have made a difference in the outcome, remand does not lie because Ms. Cookson has failed to argue an unexpected or unavoidable circumstance that prevented her from submitting the evidence earlier. Ms. Cookson provides no reason whatsoever to justify her failure to seek an MRI sooner and submit it to the ALJ before he issued his decision. Because Ms. Cookson did not show good cause for failing to obtain and submit a newer MRI of her back, and the Appeals Council did not err in finding that the new evidence would not have impacted the outcome of her case, Ms. Cookson's motion for remand on the basis of new and material evidence is DENIED.

### B. THE ALJ DID NOT ERR IN FINDING THAT MS. COOKSON'S MENTAL ILLNESS WAS NOT SEVERE

Ms. Cookson argues that the ALJ erred in failing to find at Step 2 that her mental impairments were severe. Ms. Cookson specifically highlights that Dr. J. Stephen Clifford, a non-examining physician, Dr. John Ruggiano, the Commissioner's psychological expert, Dr. Francis Sparadeo, examining psychologist, and Dr. Stephen D'Amato, treating physician, all concluded that she suffered from a severe mental illness. Ms. Cookson essentially argues that these doctors opined that she has severe mental impairments, but that her medical records do not

necessarily support that diagnosis because she also has somatoform disorder,[1] the very nature of which masks her mental impairments. Specifically, Ms. Cookson faults the ALJ for failing to acknowledge that she suffers from severe somatoform disorder and for failing to give Dr. Sparadeo's opinion concluding as much the appropriate weight.

1. **The medical opinions in the record are inconsistent on the severity of her mental impairment**

At Step 2, an impairment is considered severe when it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An impairment is "non-severe" when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28 at *3. Although Step 2 is a *de minimis* standard, it still must be met by a claimant who retains the burden of proof. *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). An ALJ may root his Step 2 decision on a finding that there is no medical evidence that a claimant suffers from a "severe *medically determinable* physical or mental impairment" which "significantly limits" her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1520(c) (emphasis added). This decision may be based solely on medical evidence, 20 C.F.R. § 404.1528(a), not on a claimant's

---

[1] As described in *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) ("*DSM IV*"), a *somatoform* disorder "is the presence of physical symptoms that suggest a general medical condition ... and are not fully explained by a general medical condition, by the direct effects of a substance, or by another mental disorder (e.g., Panic Disorder)." *Id.* at 445 (that is, "there is no diagnosable general medical condition to fully account for the physical symptoms"). *See Ramos v. Barnhart*, 60 F. Appx. 334, 335 (1st Cir. 2003). "In other words, an individual with a diagnosis of a somatoform disorder will not have hard test results or a physical impairment that can fully account for all of that person's *credible*, subjective complaints." *Id. at* 336.

own testimony about her symptoms in the absence of medical evidence. *See Teves v. Astrue*, Civil No. 08-246-B-W, 2009 WL 961231, at *4 (D. Me. April 7, 2009).

As to her first point on the ALJ's Step 2 determination, the Court finds that Ms. Cookson overstates the opinions from Drs. Clifford, Ruggiano, and D'Amato about her mental limitations. None of these doctors opined that her mental limitations are severe. Dr. Clifford found that she suffered from affective disorder that causes *moderate* restrictions of daily living, *mild* difficulties in maintaining social functioning, and *moderate* difficulties in maintaining, concentration, and persistence of pace. (Tr. at 634). Dr. Ruggiano opined that Ms. Cookson had no functional limitations resulting from any mental impairment because she was not diagnosed with nor has she regularly (or even occasionally) treated for a severe mental impairment. (*Id.* at 104-06). In evaluating Dr. Sparadeo's notation about Ms. Cookson's somatoform and her inability to work, Dr. Ruggiano discounted his opinion because Dr. Sparadeo did not diagnose her with somatoform and his reference to somatoform was based on Ms. Cookson's subjective complaints. (*Id.* at 105). As her primary care physician, Dr. D'Amato concluded that her psychological symptoms would cause *moderate to moderately severe* limits in her ability to work. (*Id.* at 954). But, his records reflect that he mainly managed her medications over the years. His records do not contain any details of physical or mental exams to support a diagnosis of a severe mental disability. (*Id.* at 714-19; 950). Because the doctors she cited do no opine that Ms. Cookson suffers from a severe medically determinable mental impairment, her argument that the ALJ erred in discounting these opinions at Step 2 must fail.

### 2. Ms. Cookson's treating physicians' opinions did not merit controlling weight

The ALJ did not have to give controlling weight to Dr. D'Amato, Dr. Philip, and Dr. Marano, even though they treated Ms. Cookson. Generally, a treating physician's well-

supported medical opinion is given "controlling weight so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Polanco–Quinones v. Astrue*, 477 F. Appx. 745, 746 (1st Cir. 2012) (quoting 20 C.F.R. § 404.1527(d)(2)). When the ALJ finds that a treating physician's opinion does not warrant controlling weight, he or she must nevertheless weigh the medical opinion based on other factors included in the Commissioner's regulations. 20 C.F.R. §§ 404.1527(c). Those factors are: (1) the "[l]ength of the treatment relationship and the frequency of examination," 20 C.F.R. § 404.1527(c)(2)(i); (2) the "[n]ature and extent of the treatment relationship," 20 C.F.R. § 404.1527(c)(2)(ii); (3) the supportability of the opinion, 20 C.F.R. § 404.1527(c)(3); (4) the consistency of the opinion "with the record as a whole," 20 C.F.R. § 404.1527(c)(4); (5) the specialization of the source, 20 C.F.R. § 404.1527(c)(5); and (6) "[o]ther factors." 20 C.F.R. § 404.1527(c)(6). "Other factors" include "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in [the claimant's] case record." *Id.* "If the ALJ finds, as he may, that any treating physician's opinion is not credible, then he must comply with the regulations by explicating his grounds." *Nguyen*, 172 F.3d at 36.

The ALJ afforded the treating doctors' opinions little weight because of the "inconsistencies of the subjective complaints, objective findings, and functional limitations" in the record." (Tr. at 45). For example, the ALJ discounted Dr. Philip's opinion because his medical source statement in support of her disability application was made in May 2010, but he had last seen Ms. Cookson in September of 2009 and the results of that exam were normal. (*Id.*) Therefore, the ALJ determined that his opinion that she was disabled had to be based solely on

13

Ms. Cookson's subjective complaints. (*Id.*) Dr. Marano's opinion suffers the same defects - his opinion of total disability was made in May of 2010, but he last examined her in June of 2007. (*Id.*) Lastly, Dr. D'Amato's opinion was discounted because his treatment records and notes do not support the degree of functional limitation he assessed. (*Id.* at 46). These doctors did not treat her with any frequency, did not keep records of detailed physical exams, and their opinions were inconsistent with the record as a whole. Because the ALJ had grounds to give these opinions limited weight and made clear why he did so, the Court defers to his assessment.

### 3. The ALJ did not err in rejecting Dr. Sparadeo's opinion based on a limited mental health treatment record

Dr. Sparadeo met with Ms. Cookson and performed a battery of psychological tests and, based on the results, concluded that she was disabled. But, the ALJ afforded Dr. Sparadeo's opinion minimal weight because he only met with her once and her extensive records contained no contemporaneous mental health notes to provide context to any of his opinions. (*Id.* at 47). Looking at Ms. Cookson's records as a whole, the Court defers to the ALJ's evaluation of Dr. Sparadeo's opinion because it was based on substantial evidence.

Ms. Cookson's mental health treatment over the years was extremely limited. She saw Tina Plaszek over a six month period in early 2011 and appeared to improve, had inpatient treatment in March 2012 after a suicide attempt, and had a psychological evaluation in May 2012 with one follow up appointment a month later. That is the extent of her treatment other than the two examinations pursuant to her disability application.[2] Dr. Ruggiano found it difficult to determine that she was disabled due to mental limitations because she had not been in psychological treatment. "Implicit in a finding of disability is a determination that existing

---

[2] Dr. Parsons also examined Ms. Cookson in conjunction with her 2009 disability application. *See supra* at 4.

14

treatment alternatives would not restore a claimant's ability to work." *Tsarelka v. Sec'y of Health & Human Servs.*, 842 F.2d 529, 534 (1st Cir. 1988) (per curiam). Because of the dearth of mental health records, other than a record of her pharmacological treatment, there is "no way of telling whether psychiatric treatment could have improved these 'marked' limitations." *Ortiz*, 955 F.2d at 770. The fact that Ms. Cookson did not seek treatment for her mental limitations over the course of almost a decade, and the fact that her records are devoid of any evidence of sustained treatment in this case both support the ALJ's decision that Ms. Cookson was not disabled. *Id.*

Ms. Cookson's answer to this lack of treatment is that she suffers from somatoform disorder, diagnosed by both Drs. Ruggiano and Sparadeo, a symptom of which is that she would not seek treatment. This answer does not help her cause, however, because the Court has reviewed the opinions and supporting medical evidence and finds no physician diagnosis of somatoform in the record.[3] (Tr. at 104-05). Dr. Sparadeo mentions a somatization disorder for the first time in Ms. Cookson's extensive medical history in his 2013 report. (*Id.* at 941-49). He writes: "[t]he item endorsement pattern (on the Personality Assessment Inventory test) indicates that *she reports* symptoms consistent with both conversion and somatization disorders." (*Id.* at 945) (emphasis added). This discussion appears to be based on Ms. Cookson's self-reporting and not on the medical evidence in the record. Furthermore, Dr. Sparadeo had a final opportunity to provide a concrete diagnosis of somatoform disorder in his concluding section of his report (where he did diagnose other mental limitations) and he failed to do so. (*Id.* at 947).

---

[3] In fact, Dr. Clifford completed a psychiatric review technique form that included different disorders with a checklist of factors that evidence each of the disorders along with his report in 2010. There was a page listing somatoform disorder and he did not check off any of the factors that are indicators of this condition. (Tr. at 630).

Dr. Ruggiano's only opinion on whether Ms. Cookson has somatoform disorder was expressed at the hearing on cross examination where he acknowledged that, if he were to rely solely on Dr. Sparadeo's report, he would find that Ms. Cookson suffered from somatoform disorder. (*Id.* at 113). But, he was also clear that, because her records contained very limited psychological treatment, no progress notes, and she was never diagnosed with somatoform by a medical or mental health provider, he could not diagnose Ms. Cookson with a condition that was not indicated in her records or assess her functional limitations based on that condition. (*Id.* at 107-08).

Because Ms. Cookson's record does not contain any confirmed diagnosis of somatoform or any other severe medically determinable mental impairment from either a treating, consulting or examining physician, the ALJ had no evidentiary basis upon which to evaluate somatoform at Step 2. In addition, the ALJ was entitled to rely on Ms. Cookson's own reports throughout her medical records to multiple doctors that she did not suffer from depression or anxiety or have any emotional problems that limited her ability to work or socialize with others. (*Id.* at 77, 344-46, 419, 617, 670, 671). Therefore, the Court finds that the record supports the ALJ's determination that Ms. Cookson did not suffer a severe medically determinable mental impairment. Thus, the Court finds that the ALJ did not err at Step 2 on this record.

### C. THE ALJ DID NOT ERR IN FINDING THAT MS. COOKSON WAS NOT CREDIBLE

As Ms. Cookson's attorney stated in one of her hearings, this is essentially a pain case. (*Id.* at 68). Her medical records show that she has received numerous treatments for pain associated with the 2001 surgery and, while some efforts have been minimally successful, she continued to report that she was in disabling pain. (*Id.* at 38). In evaluating the severity of her alleged pain, the ALJ had to make a credibility determination. And although, the ALJ has the

power to resolve credibility issues, *Ortiz*, 955 F.2d at 769, that determination must be supported by substantial evidence. *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986). If the ALJ decides that an applicant's testimony about her pain is not credible, he "must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987).

The ALJ concluded that Ms. Cookson's testimony about the debilitating nature of her pain was not consistent with the medical evidence in the record to the degree alleged. (Tr. at 44). Subjective complaints of pain against a medical record that is inhospitable to those complaints are not fatal, however, to an individual's disability claim. In considering the credibility of Ms. Cookson's pain, "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility." *Makuch v. Halter*, 170 F. Supp. 2d 117, 127 (D. Mass. 2001) (citing SSR 96–7p). If, after evaluating the objective findings, the ALJ determines that the claimant's reports of pain are significantly greater than what could be reasonably anticipated from the objective evidence, the ALJ must then consider other relevant information. *Avery v. Sec'y of Health & Human Servs.*, 797 F.2d 19, 23 (1st Cir. 1986). Considerations capable of substantiating subjective complaints of pain include evidence of: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication taken to alleviate the pain or other symptoms; (5) treatment, other than medication, received for relief of pain; (6) any other measures used to relieve pain or other symptoms; and (7) any other factors relating to claimant's functional limitations and restrictions attributable to pain. *See id.* at 22; 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

17

This Court defers to the ALJ's credibility determination because he heard testimony from Ms. Cookson, observed her demeanor, and was in a position to balance those impressions with all of the other record evidence, including the *Avery* factors. *Frustaglia*, 829 F.2d at 195 (citing *DaRosa*, 803 F.2d at 26). After noting the lack of objective evidence of disability in the medical records, the ALJ cited specific evidence in the case record supporting his determination that she was not entirely credible. The ALJ noted that her allegations of pain contravene the facts from the record because her pain responded to medication over the years. (Tr. at 44). She had not undergone significant mental health treatment. (*Id.*) She did not consistently report depression, anxiety, or sleep disturbances. (*Id.*) Her condition responded to medication. (*Id.*) At the September 2011 hearing, Ms. Cookson denied having emotional problems. (*Id.* at 77). The ALJ also considered Ms. Cookson's reports of daily activity, where she reported that she shopped for groceries, prepared simple meals, cleaned her house, and spent time with others outside the house. (*Id.* at 44). She travelled to Florida several times over the review period and walked daily during those trips. (*Id.* at 45). These self-reports conflict with her hearing testimony that she cannot get out of bed every day. (*Id.* at 79). Therefore, based on the considerations the ALJ set forth in detail in his decision, the Court finds that his credibility determination deserves deference as he made his decision based on the record as a whole and in light of the factors set forth in the statute and regulations.

## VI.  CONCLUSION

The Court affirms the ALJ's decision in this case as it was based on substantial evidence in the record. Ms. Cookson's Motion to Reverse or Remand (ECF No. 5) is DENIED. The Commissioner's Motion to Affirm (ECF No. 8) is GRANTED.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

July 1, 2015